**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| Alice Mobley, | : | |
|     Petitioner/Defendant, | : | Civil Action No. 12-354-WS |
| v. | : | Criminal No. 10-243-WS-C |
| United States of America, | : | |
|     Respondent. | : | |

**REPORT AND RECOMMENDATION**

Petitioner Alice Mobley, a federal prison inmate represented by counsel, has filed a timely motion to vacate, set aside, or correct her sentence and brief in support pursuant to 28 U.S.C. § 2255 (Doc. 156; *see also* Doc. 154 (materials in support filed under seal)).  In compliance with the Court's order (Doc. 159), the United States has filed a response in opposition (Doc. 161), and Mobley has filed a reply in support of her petition (Doc. 164).  This action is now before the undersigned United States Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  And it is **RECOMMENDED** that Mobley's § 2255 petition be **DENIED** and the Court find that she is not entitled to a certificate of appealability and is therefore not entitled to appeal *in forma pauperis*.

**I.     The Underlying Criminal Case**

Mobley was the sole defendant in a 99-count second superseding indictment (Doc. 70), filed March 24, 2011, which charged her with one count of conspiring to defraud the United States Treasury Department, in violation of 18 U.S.C. § 371 [Count 1]; five counts of income tax perjury, in violation of 26 U.S.C. § 7206(1) [Counts 2 through 6]; thirty-eight counts of procuring false tax returns, in violation of 26 U.S.C. § 7206(2) [Counts 7 through 44]; forty counts of wire fraud, in violation of 18 U.S.C. § 1343

[Counts 45 through 84]; three counts of mortgage fraud, in violation of 18 U.S.C. § 1014 [Counts 85-87]; and twelve counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) [Counts 88-99].  The indictment also included forfeiture allegations.[1]

Mobley appeared before Judge DuBose on July 22, 2011 to plead guilty pursuant to a written plea agreement.  (Doc. 102; *see also* Docs. 103, 111.)  Pursuant to the plea agreement, Mobley agreed to plead guilty to Counts 1 (conspiracy); 42 (procuring false tax returns); 80 (a wire fraud count associated with Count 42); and 98 (an aggravated identity theft count associated with Count 42),[2] agreed to confess the forfeiture of the items named in the indictment, and agreed to certain appellate waivers.[3]  In exchange for Mobley pleading guilty, the United States agreed to (1) dismiss the remaining counts; (2) refrain from bringing any additional charges related to the facts underlying the indictment; (3) recommend a sentence at the low-end of the applicable guideline range; and (4) for sentencing purposes, cap the loss amount at $1 million.

The offense conduct in the factual resume (*see* Doc. 102 at 19-20) in part provides:

---

[1]    At all times, retained counsel has represented Mobley.  Leading up to the second superseding indictment and shortly thereafter, Mobley was solely represented by Attorney Tiffany McCord.  Attorney Angela C. Starr entered her notice of appearance (Doc. 96) on July 12, 2011, prior to Mobley's guilty plea hearing.  Attorney Michael W. Crosby, who represented Mobley at sentencing, first appeared in January 2012, but his motions for admission *pro hac vice* (Docs. 133, 134, 137, 139) were not granted until March 26, 2012 (*see* Doc. 141).  Also on that day, Magistrate Judge Nelson granted Attorney McCord's motion to withdraw (*see* Docs. 140, 142).  Attorney Susan James, who entered her appearance (Doc. 148) on May 1, 2012, after sentencing, is also representing Mobley.

[2]    "V.C." is identified as the individual linked to Counts 42, 80, and 98.

[3]    One is that, so long as her sentence did not exceed the statutory maximum or was not imposed pursuant to an upward departure or variance from the advisory guideline range, Mobley agreed to waive her right to challenge the conviction and sentence by collateral attack.  As to the impact of that waiver on the current motion, the government informs the Court, "Although there was no exception provided for claims of ineffective assistance of counsel, the United States is electing to forgo enforcement of that particular provision at this time."  (Doc. 161 at 3 n.2.)

Defendant Alice Mobley at all pertinent times, owned a controlling interest in and operated Preyear's Tax and Check Cashing Service, LCC (PTS) in Monroeville, Alabama, with locations in Atmore, Alabama and Thomasville, Alabama.  She also had ownership interests in and was involved in the operations of Kimble's and Preyear's Tax and Check Cashing Services, Greenville, Mississippi and Henry's Tax Services in Longview, Texas.  Alice Mobley knowingly conspired and agreed with workers of these businesses in knowingly filing fraudulent tax returns.

In furtherance of this conspiracy she purchased identifying information for children and other dependents to use as the basis for tax deductions as well as the earned income credit, the child dependent care credit and other credits, on tax returns in the name of people who had no relation to the dependents.  Some of Mobley's clients were aware of the falsehoods on tax returns filed in their named, others were not.  In addition, Mobley filed returns in the names of individuals without their knowledge or permission and kept the refund associated with those returns.  Mobley added false items to some client returns with the client's knowledge and consent and split the additional refunds associated with the false items with the clients.  Mobley would file said returns using a computer thereby causing an interstate communication with each fraudulent return.

Specifically, on January 20, 2010, the defendant Alice Mobley willfully aided and assisted in and procured, counseled and advised the preparation and presentation to the Internal Revenue Service of the U.S. Individual Income Tax return form for V.C. for the calendar year 2009, which was false and fraudulent as to material matters, in that said return represented that the information on the return was the information furnished by the tax payer, V.C., for the purpose of Mobley obtaining a tax refund from the United States in the name of V.C. when V.C. had not furnished Mobley with any such information or authorized or paid Mobley to file her 2009 Federal tax return. . . .

(*Id.*)

The Presentence Investigation Report (or PSR) (Doc. 122), prepared by the United

States Probation Office for this District and filed January 13, 2012, determined Mobley's

base offense level to be 7, pursuant to U.S.S.G. § 2X1.1.  Because, however, the tax loss

to the IRS was calculated to be $958,727, the base offense level was increased by 14

points, pursuant to U.S.S.G. § 2B1.1(b)(1)(H).[4]  And because the crime affected more

---

[4]     A loss more than $120,000 equals an increase of 10 points; more than $200,000 equals an increase of 12 points; and more than $400,000 (but less than $1 million) equals an increase of 14 points.  *See* U.S.S.G. § 2B1.1(b)(1).

than ten victims, a two level increase was added pursuant to U.S.S.G. § 2B1.1(b)(2)(A), and a four-level leadership role enhancement was also applied pursuant to U.S.S.G. § 3B1.1(a).   Mobley was, however, credited with the maximum three points for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).  Her adjusted offense level was accordingly determined to be 24.   That and her criminal history category of I resulted in an advisory guideline range of 51 to 63 months imprisonment.   However, due to the aggravated identity theft conviction, a two-year mandatory minimum prison term was to be consecutively imposed.  Neither the United States nor Mobley objected to the PSR.

Chief Judge Steele conducted a sentencing hearing on March 30, 2012 and sentenced Mobley to a low-end guideline-range of 51 months and a consecutive mandatory minimum sentence of 24 months for the aggravated identity theft conviction.   (*See* Docs. 143, 144.)   Mobley was also sentenced to three years of supervised release following her release from prison, and the Court ordered her to pay $720,067.07 in restitution to the IRS.  (*See id.*)  No direct appeal was filed.

## II.   Collateral Attack

Mobley's claims on collateral attack are summarized on page 4 of her memorandum in support of the petition:

> Mobley alleges that she was denied effective assistance of counsel during the pretrial and sentencing phases of her case, that her plea of guilty was not knowing and voluntary as her counsel had a per se or actual conflict which was never waived by Mobley, that the plea waiver by her to challenge her conviction and sentence was unconstitutional and invalid as the Alabama State Bar prohibits an attorney from counseling a client to waive a future challenge of ineffective assistance of counsel, and that Mobley's sentence was erroneous because she was abandoned by her retained counsel who promised to challenge the speculative dollar amounts used for guideline sentencing purposes.  Counsel Crosby was unprepared to effectively represent Mobley at her sentencing.  Further, sentencing counsel, Crosby, did nothing to mitigate the sentencing factors.

4

(Doc. 156-1 at 4 (footnote omitted).)

The undersigned will first address Attorney McCord's alleged conflict and will then turn to the alleged ineffective assistance with regard to, first, the guilty plea, and, second, sentencing.[5]

### A.    Attorney McCord's Alleged Conflict.

Where an ineffective assistance claim is based on a conflict of interest, a petitioner "must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance." *Pegg v. United States*, 253 F.3d 1274, 1277 (11th Cir. 2001); *see also Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)[.[6]]  Thus, a defendant who shows that a conflict of interest actually affected his representation need not demonstrate prejudice in order to obtain relief. *Cuyler*, 446 U.S. at 349–50.  However "the possibility of conflict is insufficient to impugn a criminal conviction," and absent a showing of actual conflict and adverse effect, a petitioner is not entitled to relief. *Id.*

"An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'"  *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (en banc) (citation omitted).  The inquiry into the existence of an actual conflict is "fact-specific."  *United States v. Novaton*, 271 F.3d 968, 1011 (11th Cir. 2001).  The petitioner must show an "actual conflict," because a speculative or merely hypothetical conflict of interest does not yield a Sixth Amendment violation.  *Reynolds v. Chapman*, 253 F.3d 1337, 1342-43 (11th Cir. 2001).  To prove adverse effect, a petitioner must demonstrate three elements: (1) "that the defense attorney could have pursued a plausible alternative strategy"; (2) "that this alternative was reasonable"; and (3) "that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." *Id.* at 1343.  "If there is a guilty plea involved, this Court looks at whether the attorney's actual conflict adversely affected the defendant's decision to plead guilty." *Pegg*, 253 F.3d at 1278.

*Aguilar-Garcia v. United States*, No. 12–11643, 2013 WL 1776704, at *1 (11th Cir. Apr. 26, 2013) (per curiam) (internal citations modified); *accord Gray-Bey v. United States*, 156 F.3d

---

[5]    The undersigned is considering the substance of her collateral attack pursuant to § 2255, which sounds entirely in ineffective assistance.  So, obviously, there is no need to address Mobley's challenge to the ability of her attorney (presumably Ms. McCord) to counsel Mobley "to waive a future challenge of ineffective assistance of counsel."

[6]    Some courts refer to the seminal decision of *Cuyler v. Sullivan* as *Cuyler* and some as *Sullivan*.  The Supreme Court refers to it as *Sullivan*.  *See, e.g., Mickens v. Taylor*, 535 U.S. 162 (2002).

733, 738 (7th Cir. 1998) ("In order for a defendant to establish that he was denied effective assistance of counsel, he must demonstrate *how* an alleged 'conflict of interest adversely affected his lawyer's performance.'") (quoting *Cuyler*, 446 U.S. at 348) (emphasis added).

Mobley has provided an affidavit under seal[7] in which she addresses the alleged conflict:

> Upon learning that I would be charged with crimes in Federal Court, my family on my behalf sought legal counsel. We contacted Attorney McCord. We discussed the possibility of my prosecution and my options. Ms. McCord noted that she had relatives in Monroe County, EB and DB. I immediately noted that I knew them and that they were tax clients of mine.
>
> After the discovery was provided to Ms. McCord we discussed the Government's case and the facts which were correct and incorrect. A reading of the indictment was confusing because the alleged victims were identified by initials not names. Upon receipt of a list provided in discovery with the names (not initials) of alleged victims referenced in the indictment and others the Government believed may have been victims of tax fraud (See Exhibit A to 2255) my son and I began trying to determine the names of the alleged victims I was actually being charged with who were listed in the indictment.
>
> To our surprise, EB and DB, listed in the indictment matched up with the suggested victim list (See Exhibit A to 2255) was the father and stepmother of Attorney McCord. My son Lloyd Preyear, who was intricately involved in my defense and discussions with my attorney Tiffany McCord, contacted her to discuss a conflict of interest. Ms. McCord acted indifferent to the revelation that her father and stepmother were alleged victims in my indictment and said she would get back with us. When she again responded she said this issue was not a problem and as relates to her father she said, "she would eat his behind up on the stand." I told Attorney McCord that her father and stepmother were not victims of tax fraud. Instead I told her that her father had knowledge of a false dependent being used and that he paid a girl for it. Contrary to the Government's case, I told her he provided his expenses and I did not

---

[7] Although Mobley's affidavit was filed under seal, none of the information extracted from it and included in this report and recommendation appears to be confidential; the substance of the information—that certain persons identified by initials in the indictment (E.B. and D.B.) are the father and stepmother of Attorney McCord—is included in Mobley's memorandum in support of her petition (*see* Doc. 156-1 at 7), which was not filed under seal.

increase E.B.'s expenses.  McCord never acted on this information in my defense nor corrected this misinformation with the Government.  During the three proffer sessions I had with the Government this information was never made known to the prosecutors or investigators.

In the monetary assessment for sentencing purposes, I was punished for the conduct relating to allegations of wrong doing involving EB and DB, Attorney McCord's father and stepmother.

McCord never told me she had a per se or actual conflict of interest because her duty to represent me in this action would require her to challenge allegations of tax fraud and other crimes charged in the indictment relating to EB and DB, (second superceding [sic] indictment).  Despite McCord's best intentions she owed a duty to her father and stepmother regarding information I would have told the Government about their tax returns at issue in my indictments.

McCord never suggested I seek independent counsel for advice on this conflict of interest.  She never explained the ramifications of the conflict.  She never suggested I could waive the conflict, or should, and she never, to my knowledge, brought this matter to the Court's attention pursuant to a request for a Rule 44 hearing wherein conflicts in representation are normally addressed by the Court.[8]

(Doc. 154 at 1-3.)

Mobley further alleges in her memorandum in support that the prejudice she suffered because of Attorney McCord's alleged conflict "should be obvious":

At the least a non-conflicted counsel would have challenged the fact that E.B. and D.B., McCord's father and stepmother were not victims[,] and the same could have reduced the monetary amount used for sentencing

---

[8]     Fed. R. Crim. P. 44(c)(2) spells out the court's responsibilities in cases of joint representations (defined in Fed. R. Crim. P. 44(c)(1)):

The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation.  Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Although Mobley may only be invoking Rule 44 symbolically since this is not a joint-representation case and she has not alleged anything more than ineffective assistance of counsel, it is worth pointing out that "[a] district court's failure to conduct an inquiry pursuant to Fed. R. Crim. P. 44(c) is not a cognizable constitutional issue in a 28 U.S.C. § 2255 motion." *United States v. Arango*, 122 F.3d 1067, 1997 WL 464611, at *1 (5th Cir. Aug. 1, 1997) (per curiam) (citing *United States v. Benavidez*, 664 F.2d 1255, 1258 (5th Cir. 1982)); *accord United States v. Mers*, 701 F.2d 1321, 1326 (11th Cir. 1983).

purposes.  Also, non-conflicted counsel would have used the non-victim argument in one of the Rule 11 proffers in an effort to seek a U.S.S.G. § 5K1.1 downward departure from the advisory sentencing guidelines.

(Doc. 156-1 at 7.)

First, contrary to Mobley's belief, the Eleventh Circuit does not recognize per se violations of the Sixth Amendment right to effective assistance of counsel.  *See, e.g.*, *McCorkle v. United States*, 325 Fed. App'x 804, 808 (11th Cir. Apr. 28, 2009) (per curiam) ("[P]etitioner first argues that counsel's representation was a per se violation of the Sixth Amendment right to effective assistance because counsel participated in petitioner's criminal activities.  This argument fails because this circuit does not recognize a per se violation of the right to effective assistance of counsel.") (citing *Pegg*, 253 F.3d at 1277 (declining to apply the Second Circuit's per se analysis, but instead using the actual conflict with an adverse effect analysis)).  Thus, as stated above, to evade the prejudice prong of *Strickland*, Mobley must show, pursuant to "the **narrow** *Cuyler* exception to the *Strickland* standard[,"[9]] that McCord had **an actual conflict that adversely affected her representation** of Mobley in this Court.  *Compare Gray-Bey*, 156 F.3d at 740 ("[T]o establish a claim of ineffective assistance of counsel, a defendant, under the *Cuyler* standard, must allege facts sufficient to demonstrate a **rational, causal connection between an existing actual conflict of interest and an adverse effect** in counsel's representation contrary to the defendant's interests."), *with United States v. Swisher*, 790 F. Supp. 2d 1215, 1231 (D. Idaho 2011) ("If Swisher cannot show that

---

[9]     *Bartee v. Quarterman*, 574 F. Supp. 2d 624, 643 (W.D. Tex. 2008) ("Petitioner's complaints about the performance of Michael Sawyer during jury selection do not satisfy either the 'actual conflict' or 'adverse effect' requirements of the **narrow** *Cuyler* exception to the *Strickland* standard.") (emphasis added).

counsel's decisions were *influenced by or linked to the alleged conflict*, then the claims

must be analyzed under the *Strickland* standard.") (emphases added).[10]

### 1.    Establishing an Actual Conflict.

As to the first prong of the *Cuyler* exception to *Strickland*, the Eleventh Circuit has

"developed a test that enable [courts] to distinguish actual from potential conflicts of

interests:

> We will not find an actual conflict of interest unless appellants can point
> to specific instances in the record to suggest an actual conflict or
> impairment of their interests. . . . Appellants must make a factual showing
> of inconsistent interests and must demonstrate that the attorney made a
> choice between possible alternative causes of action, such as eliciting (or
> failing to elicit) evidence helpful to one client but harmful to the other.  If
> he did not make such a choice, the conflict remain(s) hypothetical.

*Reynolds*, 253 F.3d at 1343 (quoting *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987));

*compare id.*, *with Gardner v. Rowley*, No. 4:03CV0085 RWS, 2006 WL 852375, at *13 (E.D.

Mo. Mar. 30, 2006) (A "hypothetical assertion" that counsel actions (or failures to act)

"resulted in [a defendant] receiving[, for example,] the sentence he did . . . is insufficient

to carry his burden.") *and Gray-Bey*, 156 F.3d at 739 ("[A] section 2255 petition must be

accompanied by 'a detailed and specific affidavit which shows that the petitioner had

actual proof of the allegations going beyond mere unsupported assertions.'") (quoting

*Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996)); *see also United States v. Arango*,

122 F.3d 1067, 1997 WL 464611, at *1 (5th Cir. Aug. 1, 1997) (per curiam) (to establish the

---

[10]       It has been held, however, that a petitioner who "fail[s] to show an adverse effect
under *Cuyler*, [ ] cannot show prejudice under the two-prong test of *Strickland*[.]"  *Gardner v.
Rowley*, No. 4:03CV0085 RWS, 2006 WL 852375, at *13 (E.D. Mo. Mar. 30, 2006) (citing *Strickland*,
466 U.S. at 697 (holding that to establish a Sixth Amendment violation a petitioner must
demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of
the proceeding would have been different"); *Caban v. United States*, 281 F.3d 778, 781 (8th Cir.
2002) (holding that the burden on a defendant to show a Sixth Amendment violation is lighter
in cases under *Cuyler* than under *Strickland*)).

actual conflict prong, a petitioner "must show that his attorney actively represented conflicting interests").

This is not a case of joint representation; Attorney McCord was not representing her father, her stepmother, and Mobley in this case. But, for purposes of determining whether Attorney McCord had an actual conflict, Mobley has pointed to the familial link and has alleged that Attorney McCord failed to disclose to the United States certain information Mobley contends is harmful to, at least, McCord's father. Given the government's case (discussed in detail below), however, Mobley has not shown that this information (concerning McCord's father) is necessarily helpful to her. Mobley has, moreover, neither shown (nor even alleged) that McCord made a choice not to disclose this information. *See Reynolds*, 253 F.3d at 1343 (a defendant "must demonstrate that the attorney made a choice between possible alternative causes of action . . . . If he did not make such a choice, the conflict remain(s) hypothetical."). As such, the conflict remains hypothetical. But, for purposes of continuing the analysis, the undersigned will, nevertheless, assume (without deciding) that Attorney McCord possessed an actual conflict.

### 2.    Showing an Adverse Effect.

"[A]n actual conflict of interest is not enough for a presumption of prejudice. The second prong of this standard requires that the conflict have an adverse effect upon the attorney's performance." *United States v. Harris*, 846 F. Supp. 121, 128 (D.D.C. 1994); *accord Mickens v. Taylor*, 535 U.S. 162, 171, 172 n.5 (2002) ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."). "To demonstrate adverse effect, a defendant must establish that an 'actual lapse in representation,' resulted *from the conflict*." *Harris*, 846 F. Supp. at 128 (quoting *Winkler v. Keane*, 7 F.3d 304, 309 (2d Cir. 1993) (quoting, in turn, *Cuyler*, 446

U.S. at 336)) (emphasis added); *accord Gray-Bey*, 156 F.3d at 740 (a defendant "must allege facts sufficient to demonstrate a rational, causal connection between an existing actual conflict of interest and an adverse effect in counsel's representation contrary to the defendant's interests"); *Swisher*, 790 F. Supp. 2d at 123 (counsel's alleged ineffectiveness must be "influenced by or linked to the alleged conflict").

> "The 'adverse effect in the *Cuyler* [*Sullivan*] sense must be one that significantly worsens counsel's representation of a client.' A conflict that causes some problems with the attorney-client relationship, such as 'transient feelings of mistrust,' but has no significant effect on representation is not an 'adverse effect' in the *Cuyler* [*Sullivan*] sense."

*Swisher*, 790 F. Supp. 2d at 1230 (quoting *United States v. Mett*, 65 F.3d 1531, 1535-36 (9th Cir. 1995)).

What a counsel failed to do in a conflicts case, moreover, can be more telling than what counsel did do. *See United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1998) (explaining that a lapse in representation "adversely affecting the defendant's interests can be demonstrated not only by what the attorney does, but by what he refrains from doing") (citing *Holloway v. Arkansas*, 435 U.S. 475, 489–90 (1978)); *see also id.* at 1080 (Mansmann, J. dissenting) ("Conflict of interest cases tend therefore to have us inquire into sins of omission rather than sins of commission."); *United States v. Tatum*, 943 F.2d 370, 376 (4th Cir. 1991) ("[T]he failure to take actions that are clearly suggested from the circumstances can be as revealing."). And the court in *Harris* discussed the "helpful test for proving adverse effect on the basis of what an attorney failed to do" employed by courts in the First and Third Circuits, which is substantively the same as the test established by the Eleventh Circuit. *See Reynolds*, 253 F.3d at 1343; *Smith*, 815 F.2d at 1404.

> [A defendant first] must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. He need not show that the defense would necessarily have been successful if it had been

used, but that it possessed sufficient substance to be a <u>viable alternative</u>. Second, he must establish that the alternative defense <u>was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests</u>.

*Harris*, 846 F. Supp. at 129 (quoting *Gambino*, 864 F.2d at 1070 (quoting, in turn, *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir. 1985) (citing *Brien v. United States*, 695 F.2d 10, 15 (1st Cir. 1982))) (emphasis added); *compare id.*, *with Reynolds*, 253 F.3d at 1343 ("a plausible alternative strategy" that is "reasonable" . . . "was not followed because it conflicted with the attorney's external loyalties").[11]

Further, most divided loyalty cases, understandably, involve joint representations, but in *Harris*, the court concluded that a defense counsel's outside loyalties to a non-co-defendant (through an intimate personal relationship) prevented counsel from pursuing a viable alternative defense and, thus, adversely affected her client:

> Although Ms. Hunter did put on a plausible defense, this court believes that there was an alternative defense strategy that was not vigorously pursued because of trial counsel's relationship with Officer Muzzatti. Trial counsel could have focused her defense around the possibility that the police were completely mistaken about key facts surrounding the arrest of Mr. Harris. Such a defense argument is well-recognized as a powerful weapon in front of a jury and would have been perfectly suited

---

[11] The Eighth and Ninth Circuits appear to use the same standard. *See Noe v. United States*, 601 F.3d 784, 790 (8th Cir. 2010) ("The effect must be actual and demonstrable, causing the attorney to choose to engage or not to engage in particular conduct. To make such a showing, the defendant must identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.") (citations and quotation marks omitted); *Swisher*, 790 F. Supp. 2d at 1230 ("To establish an adverse effect, a defendant must show that his attorney chose 'between possible alternative courses of action that impermissibly favored an interest in competition with those of his client.' *Washington v. Lampert*, 422 F.3d 864, 873 (9th Cir. 2005). Stated another way, he must demonstrate 'that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.' *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005) (internal quotation marks omitted).").

for this case.  Indeed, counsel for movant's codefendant used this tactic, and the jury hung on both counts against the codefendant.

*Id.*; *see also id.* at 128 (as the court noted, "The extent of the relationship between trial counsel and Officer Muzzatti[, an adverse witness, was] at the heart of [that] matter. During the entire period that Ms. Hunter was representing Mr. Harris, she was involved in a longstanding, adulterous, intimate affair with Officer Muzzatti.  Ms. Hunter admits to having professed her love for Muzzatti before she began representing Mr. Harris.  Ms. Hunter was so committed to Mr. Muzzatti that she gave him a key to her home, allowing him to come and go as he pleased.  Although Ms. Hunter and Officer Muzzatti were not married, that does not change the nature of their commitment.  In fact, although Officer Muzzatti is still married, Ms. Hunter and he have now been together for nearly two years.") (internal record citations omitted).

### 3.    Adverse Effect Analysis.

A close examination of the indictment and Mobley's plea agreement—what the indictment says about Mobley's schemes, particularly with regard to E.B. and D.B., and what Mobley acknowledges about her schemes in the plea agreement—is the key to finding that, even if the undersigned assumes, without deciding, that Attorney McCord had an actual conflict, that conflict did not adversely affect Mobley.  *Compare Reynolds*, 253 F.3d at 1343 ("We will not find an actual conflict of interest unless appellants can point to specific instances in the record to suggest an actual conflict or impairment of their interests.") (quoting *Smith*, 815 F.2d at 1404), *with Swisher*, 790 F. Supp. 2d at 1231 ("In determining whether a defendant has made the requisite showing, 'the court itself must examine the record to discern whether the attorney's behavior seems to have been influenced by the suggested conflict.'") (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1452 (9th Cir. 1994)).

Of the thirty-eight counts of procuring false tax returns (Counts 7 through 44), all but one (Count 24) have a corresponding wire fraud count.  But only twelve of those thirty-eight counts have a corresponding aggravated identity theft count.  This is, of course, consistent with the factual resume in Mobley's plea agreement, which in part provided that "[s]ome of Mobley's clients were aware of the falsehoods on tax returns filed in their names, [while] others were not."  (Doc. 102 at 19.)  Some clients even split their improper additional refunds with Mobley.  (*See id.*)  Thus, the undersigned necessarily rejects any characterization that the United States believed that ***all*** persons identified in the indictment by initials (whose actual names were revealed to Mobley through discovery) were "victims."  (*See* Doc. 154, Mobley Aff., at 2 ("Upon receipt of a list provided in discovery with the names (not initials) ***of alleged victims referenced in the indictment and others the Government believed may have been victims of tax fraud*** . . . .") (emphasis added).)

However, some of Mobley's "clients" can truly be classified as victims.  (*See id.* ("Mobley filed returns in the names of individuals without their knowledge or permission and kept the refund associated with those returns.").)  And Mobley pleaded guilty to procuring a false tax return, a wire fraud, and an aggravated identity theft count associated with one such "victim," "V.C."  But, as to Attorney McCord's father (E.B.) and stepmother (D.B.), while both are associated with counts related to procuring false tax returns and wire fraud, neither is associated with a count for aggravated identity theft.[12]  Moreover, the information Mobley provides in her affidavit related to

---

[12]     Count 11 of the indictment charges that "on February 8, 2010, [Mobley] willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal Revenue Service, of a U.S. Individual Income Tax Return, Form 1040, for D.B. for calendar year 2009, which was false and fraudulent as to material matters, including that the said return represented that S.L. and K.L. were grandchildren of D.B. who lived with D.B. for more than half of 2009, for the purpose of falsely claiming the Earned Income Credit, when as

Attorney McCord's father—information she contends Attorney McCord should have "acted on"—that "Attorney McCord['s] father and stepmother were not victims of tax fraud" would probably not come as a surprise to the government.

More importantly, Mobley has not alleged—much less shown—how the adverse effect standard has been met. She simply has failed to allege that a plausible alternative strategy, which was reasonable given the circumstances, was not followed **because** it conflicted with Attorney McCord's loyalties to her father and stepmother. *See Reynolds*, 253 F.3d at 1343. The only thing Mobley has alleged is that McCord initially "acted indifferent to the revelation that her father and stepmother were [identified] in [Mobley's] indictment" and later "said this issue was not a problem and[,] as relates to her father[, stated,] 'she would eat his behind up on the stand.'"[13] But, given the United States' case against Mobley, it appears that Attorney McCord decided to eschew trial and, instead, determined the best strategy was a plea deal. Mobley has failed to show that Attorney McCord's ineffectiveness with regard to the plea deal struck or sentencing

---

Mobley then and there well knew and believed, S.L. and K.L. were not grandchildren of D.B. and did not live with D.B. for more than half of 2009." The corresponding wire fraud count is Count 50.

And Count 25 of the indictment charges that "on or about January 26, 2010 [Mobley] willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal Revenue Service, of a U.S. Individual Income Tax Return, Form 1040, for E.B. for calendar year 2009, which was false and fraudulent as to material matters, including that the said return represented that E.F. was a dependent -grandchild of E.B. for the purpose of falsely claiming the dependent deduction and falsely claiming the Child and Dependent Care Credit, when as Mobley then and there well knew and believed, E.F. was not a dependent grandchild of E.B." The corresponding wire fraud count is Count 63.

[13]    On reply, Mobley asserts that "[i]t is conceivable that McCord could have proceeded to trial with Mobley and challenged [the] testimony of [McCord's] own family." (Doc. 164 at 1.) This is of course speculative. But, moreover, this is not an admission that going to trial was a plausible alternative strategy that was reasonable in this case and was not followed because of any feelings of loyalty Attorney McCord felt toward her father and stepmother.

was rationally and casually connected to, or—put differently—"influenced by or linked to," the alleged conflict.

In her petition, Mobley fails to even allege a plausible alternative strategy to pursuing a plea agreement. While Mobley alleges that Attorney McCord should have acted on the information regarding her father and stepmother, Mobley has not shown that, if this information was disclosed (assuming the United States did not know this information), it would have set up a plausible alternative to the strategy of resolving her case through a plea agreement.[14] As such, it has neither been shown that Mobley's mystery plausible alternative strategy was reasonable nor that Attorney McCord failed to follow it because of any loyalties to her father and stepmother.[15]

Even if the undersigned was to construe Mobley's contention that a "non-conflicted counsel would have used the non-victim argument in one of the Rule 11 proffers in an effort to seek a U.S.S.G. § 5K1.1 downward departure from the advisory sentencing guidelines" (Doc. 156-1 at 7) as proposing a plausible alternative strategy with respect to plea negotiations that Attorney McCord failed to follow out of loyalty to her father and stepmother, such a strategy is entirely speculative and, as such, not reasonable "because the government retains enormous discretion in deciding whether to make a § 5K1.1 motion." *United States v. Lichfield*, 499 Fed. App'x 827, 832 (10th Cir.

---

[14]    Further, Mobley has also not alleged (much less shown) that the alleged conflict had any affect on her decision to plead guilty. *See Pegg*, 253 F.3d at 1278. Indeed, Mobley has ratified her decision to plead guilty in the affidavit she filed in support of her habeas petition. (*See* Doc. 154 at 6 ("I do not seek to vacate my conviction because I am guilty of the crimes to which I pled guilty").)

[15]    This also undercuts any assumption that McCord's conflict was actual. As *Reynolds* and *Smith* instruct, Mobley "must demonstrate that [McCord] made a choice between possible alternative causes of action . . . . If [McCord] did not make such a choice, the conflict remain(s) hypothetical." 253 F.3d at 1343 (quoting 815 F.2d at 1404); *compare id., with Arango*, 1997 WL 464611, at *1 (to establish the actual conflict prong, a petitioner "must show that his attorney actively represented conflicting interests").

Oct. 17, 2012) (citing *United States v. Altamirano–Quintero*, 511 F.3d 1087, 1090 (10th Cir. 2007) (A § 5K1.1 "motion is ordinarily left to the Government's discretion (unless the Government gives up that discretion as part of a plea agreement)[.]"); *United States v. Abston*, 401 Fed. App'x 357, 363 (10th Cir. Nov. 5, 2010) ("[T]he government has almost boundless discretion in deciding whether to move for . . .  a [§ 5K1.1] departure[.]")).

Mobley's plea agreement with the United States plainly provides the same.  (*See, e.g.*, Doc. 102, ¶ 22 ("The defendant understands and agrees that she has no right to cooperate, and the decision whether to allow her to cooperate is ***reserved solely to the United States in the exercise of its discretion*.") (emphasis added).)[16]   And AUSA Bordenkircher stated, unequivocally, at sentencing that Mobley did not qualify for § 5K1.1 consideration:

> As far as a 5K, she did not qualify.  She was not truthful.  She has now come back and said she wants to be truthful.  But I'll just be -- and I'm going to give her the chance, but I personally met with her, and what she said to me was not the truth.
>
> Now, later on, if she can come back and help us crack down on some of these other tax fraud places in Mississippi and Texas, then she should get the benefit of her bargain, but right now, no.  And so I think a sentence at the low end of the Sentencing Guideline is recommended in this case, Your Honor.

(Doc. 150 at 21 [21:10-20].)

Importantly, based on the plea agreement and AUSA Bordenkircher's statement at sentencing, it is clear Mobley endeavored to cooperate with the United States in an

---

[16]    *Cf. Palacios v. United States*, No. 09–21160–CIV, 2012 WL 5387359, at *16 (S.D. Fla. Nov. 1, 2012) ("Where[ a] plea agreement contains no promise to file a substantial assistance motion, the government's failure to file such a motion is reviewed only for a constitutionally impermissible motivation, such as race, religion, or other arbitrary classification or the absence of a rational relation to a legitimate government purpose[, and where a defendant makes no such allegations,] the government [does] not breach the plea agreement by failing to move for downward departure due to substantial assistance and [counsel cannot be] ineffective for failing to file a motion to compel the government to file a motion for downward departure.") (internal citation and quotation marks omitted).

attempt to obtain a § 5K1.1 motion.  Her efforts were not successful in the eyes of the United States.  And, most importantly for this conflicts analysis, Mobley never alleges that she withheld information—such as information regarding E.B.'s tax return—in her attempt to cooperate with the United States.

Moreover, based on the AUSA's statement at sentencing, any "use[ of] the non-victim argument in one of the Rule 11 proffers" likely would not have merited a § 5K1.1 departure.  The United States sought Mobley's cooperation with regard to "crack[ing] down on some of these *other* tax fraud places [outside of Alabama]."  The United States was not seeking her cooperation with regard to which of her clients were "victims" and which were not.  And, as the plea agreement made clear to Mobley, the United States determines what information constitutes substantial assistance to earn a § 5k1.1 motion. (*See, e.g.*, Doc. 102, ¶ 22(g) ("If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, *a decision specifically reserved by the United States in the exercise of its sole discretion*, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 . . . ."); *id.* ("If the defendant's effort to cooperate with the United States does not amount to substantial assistance *as determined solely by the United States*, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.") (emphases added).)[17]

---

[17]     *Cf. United States v. Hutchins*, Nos. 3:08cr39/MCR/CJK; 3:09cv566/MCR/CJK, 2012 WL 4336014, at *9 (N.D. Fla. Aug. 21, 2012) (applying the more stringent *Strickland* prejudice prong) ("Contrary to Hutchins's assertion, federal courts do not have authority to review a prosecutor's decision to withhold a substantial assistance motion, unless such motion was withheld on unconstitutional grounds. Noting the discretion to which such decisions are committed, this circuit's court of appeals, with few exceptions, has declined to intrude upon the traditional province of the prosecuting authority[.]  . . . Here, defendant does not allege that a substantial assistance motion was withheld on constitutionally impermissible grounds,

Finally, if the alleged harm caused by an assumed actual conflict does not affect the outcome—for example, the sentence imposed—there is no adverse effect, and, thus, no actual conflict. *See, e.g., Gardner*, 2006 WL 852375, at *13 ("Assuming, without deciding, that Schroeder's representation of both Petitioner and Randle during the pretrial stages gave rise to an actual conflict of interest, this conflict did not adversely affect Petitioner's sentence. The sentencing judge testified that the question of who had the knife had no affect on her sentencing decision because both defendants were charged with acting in concert.") (citation and footnote omitted).

Similarly, although the PSR acknowledges that, in addition to the IRS, Mobley's "unsuspecting tax return clients" were her primary victims, Mobley's offense level was increased, pursuant to U.S.S.G. § 2B1.1(b)(1)(H), based on the $958,727 estimated actual tax loss to the IRS **_only_**. (*See* Doc. 122 at 6-7.) The increase was not based on any loss to Mobley's clients or victims. Thus, for the purpose of calculating the loss amount that ultimately determined the advisory guideline range for sentencing, it made no difference whether E.B. and D.B. actively participated in Mobley's scheme or were unaware of the falsehoods Mobely added to their returns. Even assuming Attorney McCord, out of loyalty to her father and stepmother, failed to disclose to the

---

acknowledging instead that the prosecutor declined to file such a motion in light of what the government perceived to be less-than complete and truthful cooperation. In other words, the prosecutor still would have had all but plenary discretion to determine defendant's entitlement to a substantial assistance motion, notwithstanding an operable plea and cooperation agreement. Speaking to that very question at sentencing, the prosecutor indicated that the quality of Hutchins's cooperation, suffering as it did from doubts regarding the credibility and thoroughness of information he divulged during the proffer interview, did not justify a substantial assistance motion. Defendant's theory of prejudice, premised on the faulty assumption that a formal cooperation agreement, standing alone, could have somehow compelled the government to file a substantial assistance motion, is therefore unpersuasive. Unable to establish a probability that counsel's alleged error altered the outcome of the sentencing proceeding, defendant cannot prevail on this claim of ineffective assistance of counsel.") (citations omitted), *report & recommendation adopted*, 2012 WL 4336025 (N.D. Fla. Sept. 20, 2012).

government that E.B. was complicit with regard to the falsity of his tax return identified in Mobley's indictment—and, moreover, assuming, again, this is something the government did not already know—the failure to make such a disclosure did not affect sentencing.   And the undersigned must reject Mobley's speculative contention that, "[a]t the least a non-conflicted counsel would have challenged the fact that E.B. and D.B., McCord's father and stepmother were not victims *and the same could have reduced the monetary amount used for sentencing purposes*."  (Doc. 156-1 at 7 (emphasis added).)

> **B.      *Strickland.***

Because Mobley has not shown that Attorney McCord's "decisions were influenced by or linked to the alleged conflict, [her] claims must be analyzed under the *Strickland* standard."  *Swisher*, 790 F. Supp. 2d at 1231.

Thus, to establish a claim of ineffective assistance of counsel, Mobley must show (1) that her attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different.  *See generally Strickland v. Washington*, 466 U.S. 668 (1984).  She "bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."  *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926 (2002); *accord Cooper v. Secretary, Dep't of Corrs.*, 646 F.3d 1328, 1351 (11th Cir. 2011).

To succeed on such a claim, Mobley "must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.   And "[w]hen analyzing ineffective-assistance claims,

reviewing courts must indulge a strong presumption that counsel's conduct fell within

the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051,

1053 (11th Cir. 1999) (citations omitted).  As the Supreme Court recently explained,

> "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S. Ct. 1473, 1485 (2010).  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.  *Strickland*, 466 U.S. at 689–90.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689.  The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.  *Id.* at 690.

*Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 788 (2011) (some internal citations

modified or omitted).

When applying the *Strickland* standard, it is clear, moreover, that courts "are free

to dispose of ineffectiveness claims on either of its two grounds."  *Oats v. Singletary*, 141

F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527

U.S. 1008 (1999); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004)

("[O]nce a court decides that one of the requisite showings has not been made it need

not decide whether the other one has been.").

### 1.    Guilty Plea.

> The two-pronged *Strickland* test is [also] applicable to ineffective assistance of counsel claims arising out of the plea process.  *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct.  *Id.* at 58.  Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused

may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. In other words, *in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Id.* The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial. *Upshaw v. Untied States*, No. 2:07-cv-111-FtM-33DNF, 2008 WL 638261, at *1 (M.D. Fla. Mar. 5, 2008) (citing *Hill*, 474 U.S. at 59).

*Rosado v. Secretary, Dep't of Corrs.*, No. 8:09–cv–02518–EAK–EAJ, 2010 WL 2976886, at *4 (M.D. Fla. July 20, 2010) (some citations modified and emphasis added); *see also Missouri v. Frye*, --- U.S. ----, 132 S. Ct. 1399, 1409 (2012) (affirming that that decision "[did] nothing to alter the standard laid out in *Hill*. In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'") (quoting *Hill*, 474 U.S. at 59); *id.* (further noting that "*Hill* was correctly decided and applies in the context in which it arose[,]" which is the same context the Court faces with this habeas petition).

Aside from presenting to the Court Attorney McCord's alleged conflict, it is not clear that Mobley is directly attacking her decision to plead guilty (*see* Doc. 156-1 at 6-9) by showing "a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

However, to show *Strickland* prejudice arising out of the plea process, such an allegation is required.  Thus, Mobley's candid admission "I do not seek to vacate my conviction because I am guilty of the crimes to which I pled guilty" (Doc. 154 at 6) is fatal to any claim for ineffective assistance of counsel with regard to her guilty plea.  *See, e.g., Davis v. United States*, 335 Fed. App'x 825, 827 (11th Cir. June 9, 2009) (per curiam) (A "movant [who] (1) fail[s] to allege in his motion to vacate that, but for counsel's advice, he would not have pled as he did or (2) otherwise fail[s] to show special circumstances indicating that counsel's advice affected his decision to plead, [lacks an] allegation of prejudice [ ]sufficient to satisfy *Strickland*.") (citation omitted).[18]

## 2.  Sentencing

As to sentencing, Mobley asserts that both Attorney McCord and Attorney Crosby were ineffective because they "failed to mitigate her sentencing guidelines with evidence which favored a substantially lower sentence."  (Doc. 156-1 at 15.)  Mitigating evidence, according to Mobley, is twofold—evidence to refute (1) the loss amount and (2) her role enhancement.

As to the loss amount, Mobley asserts that "[i]t was clear during McCord's representation that the monetary amount used to calculate the advisory guidelines was in dispute."  (*Id.* at 16 (citing Doc. 102, plea agreement; *see id.* at 20 ("The defendant and the United States agree and stipulate that the amount of loss in this matter is less than $1,000,000.00."); *see also* Doc. 111, change of plea hearing tr., at 12-13 [12:16-13:6] (counsel for Mobley and the government confirming the Court's understanding that they have agreed that the loss is "less than a million, but [that Mobley was] contesting how much and [the Court will] determine that [amount] at sentencing . . .").)  And, as

---

[18]     Courts "are free to dispose of ineffectiveness claims on either of [the] two [*Strickland*] grounds."  *Oats*, 141 F.3d at 1023.

discussed above, Probation increased Mobley's offense level by 14 points, pursuant to U.S.S.G. § 2B1.1(b)(1)(H), based on an estimated tax loss to the IRS of $958,727.  (*See* Doc. 122 at 6-7.)  While no objections were filed to the PSR, Mobley, in her affidavit, informs the Court that

> McCord advised that she had hired Leonard Whatley, CPA, to assist in mitigating the monetary amount used for sentencing.  I was never provided any information gained from this person nor was the CPA used at my sentencing by Attorney Crosby.
>
> .                   .                   .
>
> There was a total breakdown in communication with McCord after I reviewed my presentence report.  She nor any other lawyer reviewed my presentence report with me.  Instead, McCord provided me a copy and told me to go over it.  This was four months after it was prepared.  When I attempted to contact her regarding discrepancies, I got no meaningful response.[19]
>
> McCord led me to believe that my sentence would start at two years for aggravated identity theft and go down from there.  She attended three proffer sessions with me and the issue of her father and stepmother as non-victims was never made known during those proffers by me or McCord.

(Doc. 154 at 4-5 (footnotes added).)

As to the four-point enhancement she received for her leadership role,[20] Mobley asserts, "McCord told me she would use at sentencing the conflicting statements of [two] previous employees, regarding challenging the suggested leadership role.  This was never done by either of my retained counsel." (*Id.* at 4.)

Although not provided in her affidavit, Mobley's memorandum in support of the petition provides, "Mobley states McCord told her she expected at sentencing to be

---

[19]    Mobley further testifies that the PSR "was not revealed to [her] by McCord until January 16, 2012," after the time for filing objections had passed.  (*Id.*)

[20]    Mobley's offense level was adjusted up four points pursuant to U.S.S.G. § 3B1.1(a) because she "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]"  *Id.*  (*See* Doc. 122 at 7.)

successful in establishing a monetary amount of loss at less than $200,000 and avoiding the four level role enhancement to U.S.S.G. § 3B1.1."  (Doc. 156-1 at 16.)

### i. Role enhancement.

Mobley offers absolutely no explanation as to how the testimony of her two former employees would have refuted her role as organizer or leader of the tax fraud scheme, which is something she admitted to in her plea agreement (*see* Doc. 102 at 19-21) and reaffirmed in this attack on her sentence (*see* Doc. 154 at 6 (". . . I am guilty of the crimes to which I plead guilty.")).  A claim for ineffective assistance simply cannot be based on "speculative assumption."  *See, e.g., Williams v. United States*, No. CRIM.3:01–CR–219–H; CIV.3:02–CV–0744–H, 2002 WL 31151191, at *2 (N.D. Tex. Sept. 20, 2002) ("This argument [that counsel was ineffective] is without merit[,]" in part because "defendant presents no evidence to support his speculative assumption . . . ."); *cf. United States v. Carnes*, 113 F. Supp. 2d 1145, 1158 n.10 (E.D. Mich. 2000) (where a past conviction is included in presentence report, a defendant may not "merely speculate[ ] about theoretical possibilities as to what defects might have been present in the [previous] proceedings.  This is insufficient to defeat the use of the [previous] conviction in determining Defendant's sentence.") (citations and internal quotation marks omitted).[21]

Thus, the undersigned cannot conclude that Mobley has shown that, had her counsel called on these two former employees to testify at her sentencing hearing, their testimony would have yielded a different result as to her role enhancement.  Accordingly, the prejudice prong of *Strickland* has not been proven as to this contention.

---

[21]    Mobley's memorandum in support of her petition does reference "reports of interview of the Lockes[, ostensibly, Mobley's two former employees,] to be filed separately." (Doc. 156-1 at 17.)  No report was ever filed.

ii.    **Loss amount.**

Similarly, Mobley has failed to provide evidence (such as an affidavit or report) from the CPA allegedly retained to "establish[ ] a monetary amount of loss at less than $200,000." Without knowing more about the CPA's purported testimony, the undersigned cannot conclude that Mobley has shown that, had her counsel obtained testimony from this CPA, such testimony would have resulted in an estimated tax loss to the IRS of less than $200,000. *See, e.g., Williams*, 2002 WL 31151191, at *2.

To even "bump" Mobley down to the next level in § 2B1.1(b)(1) (where she would have receive a 12, as opposed to a 14, point increase), the loss amount in the PSR ($958,727) would have to be mitigated by $558,728. To get below $200,000 (where she would have received a 10 point increase), the loss amount in the PSR would have to be mitigated by $758,728.

Thus, here too, the undersigned cannot conclude that Mobley has shown that, had her counsel presented the purported testimony of a CPA at her sentencing hearing, that testimony would have yielded a different result as to loss amount. Accordingly, the prejudice prong of *Strickland* has also not been proven as to this contention.

**C.    Evidentiary Hearing**

This Court "'shall' hold an evidentiary hearing on a habeas petition '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Scott v. United States*, 325 Fed. App'x 822, 824 (11th Cir. Apr. 29, 2009) (per cuiam) (quoting 28 U.S.C. § 2255(b)).

> "[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.'" *Aron v. United States*, 291 F.3d 708, 714-15 (quoting *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989)). Yet the "district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous." *Id.* at 715. Thus, the petitioner needs to

allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief.  If the allegations are not affirmatively contradicted by the record and the claims are not patently frivolous," the requirement of an evidentiary hearing is triggered and the petitioner must offer proof at that hearing.  *Id.* at 715 n.6.

*Id.* (initial internal citation modified); *see also Williams v. United States*, Civil No. 08-00513-CG-N; Crim. No. 04-00197-CG, 2010 WL 1382762, at *5 (S.D. Ala. Mar. 3, 2010) (setting forth two additional grounds for not conducting an evidentiary hearing: (1) where the petitioner's version of the facts has already been accepted as true, citing *Turner v. Crosby*, 339 F.3d 1247, 1274-75 (11th Cir. 2003); and (2) where the "the district court can determine the merits of the ineffectiveness claim based on the existing record[,]" quoting *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983)), *report & recommendation adopted by* 2010 WL 1382761 (S.D. Ala. Apr. 1, 2010).

There is no need for an evidentiary hearing.  On the existing record, Mobely has not presented non-conclusory facts that, if true, would entitle her to relief.

### III.   Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied.  28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability.  28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Mobley is not entitled to a certificate of appealability on her ineffective-assistance-of-counsel claims.  When, as is the case here, a habeas petition is being

denied entirely on the merits of an underlying constitutional claim, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also id.* at 483–84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*[ *v. Estelle*, 463 U.S. 880 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'").   With respect to the petitioner's ineffective-assistance-of-counsel claims, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issue presented is adequate to deserve encouragement to proceed further.   Accordingly, petitioner is not entitled to a certificate of appealability as to this claim.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation, the objecting party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *See, e.g., Brightwell v. Patterson*, No. CA 11–0165–WS–C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011) (the Eleventh Circuit (Hull, J.) subsequently denied the petitioner's motion for certificate of appealability on October 11, 2011 (*see* Doc. 14 in CA 11–0165–WS–C)); *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

### IV.   Conclusion

Because the Magistrate Judge is of the opinion that, as to her ineffective-assistance-of counsel claims, Mobley has not shown that her rights were violated, it is **RECOMMENDED** that the motion be **DENIED**.  The Magistrate Judge **FURTHER RECOMMENDS** that the Court find that the petitioner is not entitled to a certificate of appealability and, therefore, is not entitled to appeal *in forma pauperis*.

### V.   Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 18th day of June, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**